| | |
|---|---|
| MARK C. MORELOCK, | ) |
|         Plaintiff, | ) ) ) |
| v. | )   No.:   1:18-CV-76-DCLC-CHS |
| MS. RICHARDSON and MCMINN COUNTY, | ) ) ) ) |
|         Defendants. | ) |

# MEMORANDUM OPINION

Ms. Richardson[1] and McMinn County, Tennessee ("Defendants"), have filed a motion for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Doc. 69]. Mark C. Morelock ("Plaintiff") has filed a response in opposition to the motion [Doc. 74], and Defendants have filed a reply thereto [Doc. 76]. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED**, and this action should be **DISMISSED**.

## I.  PLAINTIFF'S RELEVANT ALLEGATIONS

Plaintiff was an inmate at the McMinn County Detention Center ("MCDC") on February 22, 2018, when he was assaulted by inmates who broke his jaw, fractured six of his ribs, punctured his lung, and fractured two of his facial bones [Doc. 1 p. 3]. He was evaluated by Nurse Richardson, who told him "to stop complaining" [*Id*. at 4]. Plaintiff was then placed in an observation cell for five days before receiving any additional treatment [*Id*.]. On the sixth day, a doctor evaluated Plaintiff and ordered x-rays [*Id*.]. Thereafter, Plaintiff was transported to a

---

[1] This Defendant's name is actually "Bennie Richesin" [*See, e.g*., Doc. 27]. For clarity and continuity, the Court will refer to this Defendant as originally designated by Plaintiff.

hospital where his injuries were confirmed, but he was returned to MCDC without additional treatment [*Id.*]. Plaintiff remained at MCDC for an additional two days before he was released on medical furlough [*Id.*].

Plaintiff received surgery eleven days following the inmate assault [*Id.*]. He lost thirty pounds "in that time frame" because MCDC fed him a regular diet while he was in the observation cell, and he was unable to chew [*Id.*]. When he returned to MCDC, he was provided a liquid diet consisting only of "a cup of broth and a cup of applesauce, about 100 calories per meal" [*Id.*]. Plaintiff contends that this paltry amount of food was insufficient to sustain a human, and that he never received a nutritious liquid meal [*Id.*].

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute

2

as to a material fact. *Anderson*, 477 U.S. at 248. If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888. Therefore, in considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita,* 475 U.S. at 586. (emphasis added). "[D]etermining whether a complaint states a plausible claim for relief. . . [is] context-specific[,] . . . requir[ing] the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court has "determined the

3

relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## III. SUMMARY JUDGMENT EVIDENCE

Plaintiff was booked into MCDC on February 21, 2018, at a weight of 190 pounds [Doc. 69-1 p. 3]. At approximately 12:50 a.m. on February 22, 2018, Defendant Richardson, an MCDC nurse, examined Plaintiff following the attack on him and notified the facility's physician, Dr. Trenhom, of the incident [Doc. 69-1 p. 1]. Later that day, Defendant Richardson applied perma-bond to a laceration on Plaintiff's temple and provided him with ibuprofen [*Id.* at 1, 3-4]. Following this exam, Plaintiff was placed in an observation cell [Doc. 1 p. 4].

Plaintiff was released from McMinn County custody on medical furlough on February 23, 2018 [Doc. 69-3]. Plaintiff was admitted to the Starr Regional Medical Center [Doc. 72-1] and was thereafter transferred to the Erlanger Medical Center [Doc. 72-2]. During a surgery consult on February 23, 2018, Plaintiff's vital signs were taken, and his weight was recorded to be 185 pounds [Doc. 72-2]. On February 26, 2018, Plaintiff underwent surgery to repair the fracture of his mandible [Doc. 72-3]. Plaintiff was discharged the same day [Doc. 72-2].

Plaintiff was booked into MCDC again on March 12, 2018, for failing to check-in during his medical furlough [Doc. 69-4]. Upon his return to MCDC, Plaintiff received a special "no chew" diet per physician's orders [*See, e.g.*, Doc. 69-2].

4

## IV. DISCUSSION

The Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an officer's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Rather, to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001); *see also Terrance v. Northville*

*Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002).

Because of this deference to medical judgments made by trained health care personnel, it is not "unconstitutional for municipalities and their employees to rely on medical judgments made by medical professionals responsible for prisoner care." *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (internal quotation marks and citation omitted).

### A. Nurse Richardson

Defendant Richardson claims the defense of qualified immunity as to the claims against her in her individual capacity. Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly-established;" and (3) whether the official's actions were objectively unreasonable. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).

For a right to be clearly-established, "at the time of the officer's conduct, the law [must have been] sufficiently clear such that 'every reasonable official would understand what he is doing is unlawful.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense by showing both "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (citing *Ashcroft*, 563 U.S. at 741). In short, it is a defense that protects "all but the plainly incompetent or those who knowingly

violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In this case, Plaintiff has asserted that Nurse Richardson provided him inadequate medical treatment, which resulted in permanent injury to his face [*See, e.g.,* Doc. 1]. However, the competent summary judgment evidence demonstrates that Nurse Richardson evaluated Plaintiff, perma-bonded a laceration on his face, gave him ibuprofen, and alerted the facility's doctor to the incident. This is not the equivalent to no care at all, Plaintiff's allegations to the contrary do not support a claim of deliberate indifference. *See Alspaugh*, 643 F.3d at 169. Further, the evidence does not support Plaintiff's assertion that he was placed in an observation cell for five days without additional treatment, as Plaintiff was placed on medical furlough and transferred to the Starr Regional Medical Center the day following the incident [Doc. 69-3; Doc. 72-1]. Therefore, the Court finds that Defendant Richardson is entitled to qualified immunity, as she did not violate Plaintiff's constitutional right to medical care.

Moreover, to the extent that it could be interpreted that Plaintiff's claim of improper diet also applies to Defendant Richardson, the summary judgment evidence is that while the medical department prescribes special diets, the facility's kitchen staff is responsible for menu planning and ensuring the diet is met [Doc. 69-2 p. 3-17; *see also* Doc. 69-1 p. 2]. Therefore, because Defendant Richardson had no role in coordinating or controlling the food provided to inmates, she cannot be held responsible for any violation of Plaintiff's constitutional right to a proper diet. As such, Defendant Richardson is likewise entitled to qualified immunity as to this claim.

### B. McMinn County

McMinn County cannot be held liable under § 1983 for any "injury inflicted solely by its employees or agents." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, it is only when the "execution of a government's policy or custom, whether made by its lawmakers or

7

by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. As such, "[a] plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

A plaintiff asserting a § 1983 claim for municipal liability based on the existence of a custom or policy must identify the policy, connect it to the municipality, and demonstrate that the injury was incurred because of the execution of that policy. *Graham v. Washtenaw*, 358 F.3d 377, 388 (6th Cir. 2004). "There must be a 'direct causal link' between the policy and the alleged constitutional violation such that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violations." *Id*. at 383 (citations omitted).

Here, Plaintiff alleges a claim of improper diet against McMinn County [*See, e.g*., Doc. 16 p. 8]. Specifically, Plaintiff asserts that he lost thirty pounds in "11 days" from the date of the incident until he was able to have surgery on his jaw [Doc. 1 p. 4]. However, Plaintiff was released from McMinn custody the day following the incident, and he had surgery on February 26, 2018 [Doc. 69-3; Doc. 72-2]. Any alleged weight loss during this time could not have been contributed to McMinn County, as Plaintiff was not in their custody during the time he alleges the weight loss occurred.[2]

Plaintiff also complains that the liquid diet he was placed on upon his return to the jail was not enough to sustain a human [Doc. 1 p. 4]. Specifically, he claims that his "liquid diet was a

---

[2] In his response in opposition to Defendants' motion, Plaintiff complains that Defendants failed to produce his meal longs following his return to jail following his surgery, which is when the asserts that his weight loss occurred [*See* Doc. 74 p. 2]. This is in direct contradiction to the allegations made in his complaint, however, and Plaintiff cannot raise new allegations in response to a motion for summary judgment. *See, e.g., Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 667 (6th Cir. 2012) ("The bar against asserting new theories at the summary-judgment-response stage is well established.").

8

cup of broth and cup of applesauce, about 100 calories per meal" [*Id.*]. However, the kitchen meal planning sheets demonstrate that Plaintiff was given more than just broth and applesauce, and that he was given an adequate caloric intake per meal [*See* Doc. 69-2 p. 18-33.]. Moreover, Plaintiff fails to indicate his beginning and ending weights. *See, e.g., Newell v. Ruth*, No. 1:11-cv-86, 2014 WL 4411045, at \*8 (E.D. Tenn. Sept. 8, 2014) (noting inmate's claims of weight loss were unsubstantiated where inmate failed to state beginning and ending weights). Therefore, the Court finds that Plaintiff's allegations of inadequate diet are conclusory and insufficient to demonstrate a constitutional violation.

Finally, Plaintiff has not shown or alleged any prior instances of unconstitutional conduct regarding inmate diets and/or medical care that would have put McMinn County on notice that either of these areas was deficient [*See, e.g*., Doc. 69-2 p. 1]. Therefore, Plaintiff's claims against McMinn County are insufficient to establish municipal liability, and the County is entitled to summary judgment. *See, e.g., Slusher v. Carson*, 540 F.3d 449, 457 ("To establish deliberate indifference, the plaintiff must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.") (internal quotation marks and citations omitted).

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [Doc. 69] will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**. The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

**SO ORDERED:**

s/Clifton L. Corker  
United States District Judge